**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

United States of America,

v. Case No. 1:23-cr-335-MLB

Turomne Washington (4),

Defendant.

__________________________________/

**ORDER**

Defendant Turomne Washington moves to suppress evidence seized from three residences and several vehicles. (Dkts. 218, 219, 220.) The Court adopts the Magistrate Judge's Report and Recommendation (Dkt. 424) and denies Defendant Washington's motion.

## I. Background

This case arose from a nationwide drug-trafficking investigation. Law enforcement executed search warrants at various locations in Georgia, Maryland, New Jersey, North Carolina, and elsewhere. (Dkt. 252-1 ¶¶ 21, 26, 33, 48, 49.) As part of that, agents obtained a warrant to search a home at 10 Center Street in Cresskill, New Jersey. (Dkt. 217-

1.) From evidence agents obtained there (including kilograms of cocaine, apparent drug ledgers, and a money counter), agents identified several other locations they believed to be associated with the drug-trafficking organization. (Dkt. 218-1 ¶¶ 29-33.) They also identified Defendant Washington and others as potentially involved in the illegal activity. (*Id.* ¶¶ 33, 35-36, n.6-7.) Agents conducted additional investigation and obtained a warrant to search an apartment at 2030 Hudson Street in Fort Lee, New Jersey, a home located at 28 7th Street in Englewood City, New Jersey, and five vehicles (a white Ford Transit, a white Nissan Rogue, a burgundy Nissan Murano, a white Jeep Cherokee, and a blue Ford Edge). (Dkt. 218-1.) Agents also identified a house located at 7724 Raynor Road in Charlotte, North Carolina and obtained a search warrant for that location. (Dkt. 219-2 ¶¶ 10-15.) Agents then identified a 2019 Nissan Maxima and a 2022 Chevy Malibu as being involved in the investigation. They obtained authorization to install tracking devices on those cars and several others. (Dkt. 337-1.)

Defendant Washington moves to suppress searches of the Hudson Street apartment, the 7th Street home, and the five vehicles—arguing in large part the police illegally searched the Center Street residence and

that misconduct invalidates the subsequent searches. (Dkt. 218.) He separately moves to suppress the search of the Raynor Street residence (Dkt. 219) and the placement of the tracking device on the Nissan Maxima and Chevy Malibu (Dkt. 220).[1] Defendant Washington and the United States litigated Defendant Washington's so-called constitutional standing to contest many of the searches. Eventually, Defendant Washington conceded he lacks standing to challenge the searches of the 7th Street residence and the white Ford Transit van. (Dkt. 253 at 1 n.1.) And the United States conceded he has standing to challenge the searches of the Nissan Rogue, Nissan Murano, Jeep Cherokee, Ford Edge, and Chevy Malibu. (Dkt. 424 at 11 n.10.)

The parties disagreed as to his standing to challenge the search of the Hudson Street and Raynor Drive residences as well as the placement of the tracking device on the Nissan Maxima. The Magistrate Judge issued an order concluding he lacks standing to contest those actions. (Dkt. 424 at 13-17.) He also concluded the warrants established probable

[1] Initially, Defendant Washington sought to suppress the placement of tracking devices on three other vehicles (the Nissan Murano, the Jeep Cherokee, and the Nissan Rogue). (Dkt. 220.) He later clarified that he limited his motion to the Maxima and Malibu. (Dkt. 263.)

cause to support the searches. (*Id.* at 16, 18-19.) So he recommends the Court deny Defendant Washington's three motions to suppress. (*Id.*) Defendant Washington filed objections. (Dkt. 444.)

## II. Standard of Review

28 U.S.C. § 636(b)(1) requires district courts to "make a de novo determination of those portions of [an R&R] to which objection is made." Any such objection "must specifically identify the portions of the [R&R] to which objection is made and the specific basis for objection." *McCullars v. Comm'r, Soc. Sec. Admin.*, 825 F. App'x 685, 694 (11th Cir. 2020)[2]; *see United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009) ("[A] party that wishes to preserve its objection must clearly advise the district court and pinpoint the specific findings that the party disagrees with."). A court must conduct a plain error review of the record for findings and recommendations to which a party has not asserted objections. *See United States v. Slay*, 714 F.2d 1093, 1095 (11th Cir.

[2] The Court recognizes *McCullars* is unpublished and not binding. The Court cites it and other unpublished cases as instructive, nonetheless. *See Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1355 n.5 (11th Cir. 2018) ("Unpublished cases do not constitute binding authority and may be relied on only to the extent they are persuasive.").

1983). "Frivolous, conclusive, or general objections need not be considered by the district court." *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988).

## III. Discussion

Defendant Washington objections to the Magistrate Judge's conclusions about his standing to attack certain searches as well as his conclusion that the warrants provided probable cause.

### A. Standing to Challenge the Searches

"[T]o claim the protection of the Fourth Amendment, a defendant must demonstrate that he [or she] personally has an expectation of privacy in the place searched, and that his [or her] expectation is reasonable." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998); *see also United States v. Cooper*, 203 F.3d 1279, 1284 (11th Cir. 2000) ("Fourth Amendment rights, however, are personal, and only individuals who actually enjoy the reasonable expectation of privacy have standing to challenge the validity of a government search."). This threshold issue "has come to be known colloquially (but as it turns out misleadingly) as Fourth Amendment 'standing.'" *United States v. Ross*, 963 F.3d 1056, 1062 (11th Cir. 2020) (en banc).

"A defendant may have a reasonable expectation of privacy in a home that he [or she] does not own or rent if he [or she] shows 'an unrestricted right of occupancy or custody and control of the premises as distinguished from occasional presence on the premises as a mere guest or invitee.'" *See United States v. Campbell*, 434 F. App'x 805, 810 (11th Cir. 2011) (quoting *United States v. Baron-Mantilla*, 743 F.2d 868, 870 (11th Cir. 1984)); *see also United States v. Rodriguez*, 762 F. App'x 712, 715–16 (11th Cir. 2019) (holding defendant's status as social guest or commercial transaction participant could not establish standing to challenge the search of a home). A defendant has the burden of showing a legitimate expectation of privacy in the area searched by a preponderance of the evidence. *United States v. Harris*, 526 F.3d 1334, 1338 (11th Cir. 2008).

**1. Hudson Street Apartment**

In support of his motion to suppress the Hudson Street apartment, Defendant Washington submitted an unsigned declaration stating he rented that apartment from co-defendant Elisa Johson, paid $2,000 to $3,000 in rent each month, began living there in July 2022, and was living there when agents execute the search warrant in September 2022.

(Dkt. 253-5.) At the start of an evidentiary hearing, Defendant Washington withdrew the declaration, announced he would not testify, and stated he would rely on evidence otherwise in the record. (Dkt. 325 at 5-7.) The Magistrate Judge concluded Defendant Washington had not satisfied his burden of proving an expectation of privacy in the home. (Dkt. 422 at 47-49.)

Defendant Washington claims the Magistrate Judge ignored evidence (from the warrant affidavit) that (1) law enforcement saw him coming and going from the Hudson Street parking garage, (2) he was in the apartment when law enforcement executed the warrant, and (3) law enforcement found his wallet and credit cards in a bedroom of the apartment. (Dkt. 444 at 7-8.) He adds that the affiant for the search warrant believed "based on a commonsense interpretation of the operative facts" that Defendant Washington was "residing" at the apartment. (*Id.*)

The Court addressed nearly the same issue in another order addressing Defendant Washington's motion to suppress the search of the Center street residence and adopts that analysis here. (Dkt. 458 at 17-19.) Neither the presence of his wallet in a bedroom of the Hudson street

residence nor evidence he came and went from the garage establishes Defendant Washington's right of occupancy or custody and control of the premises or demonstrates that he was more than a mere guest or invitee. *See United States v. Sweeting*, 933 F.2d 962, 964 (11th Cir. 1991) ("The fact that they had temporary access to the premises along with several other members of their family and had some personal effects there does not establish the requisite subjective expectation of privacy to assert standing when coupled with their explicit disclaimer of ownership or interest."); *United States v. Baron-Mantilla*, 743 F.2d 868, 870 (11th Cir. 1984) (establishing legitimate expectation of privacy requires evidence of "an unrestricted right of occupancy or custody and control of the premises as distinguished from occasional presence on the premises as a mere guest or invitee"); *United States v. Bourassa*, 2019 WL 7559294, at *8 (N.D. Ga. May 20, 2019) (defendant's unsupported claim he was overnight guest insufficient to satisfy burden of establishing expectation of privacy).

Nor does his presence in the residence at the time of the search establish constitutional standing without more. *Rakas v. Illinois*, 439 U.S.421, 425 (1978) (rejecting argument "a person need only be

'legitimately on premises' in order to challenge the validity of the search of a dwelling"). To hold otherwise would extend Fourth Amendment protections to a fleeting visitor who happens to leave personal items at someone else's home.

And, in its prior order, the court explained Defendant Washington cannot piggyback on the affiant's theory of the case to meet his burden of proof. (Dkt. 458 a 18-19 (citing *United States v.* Singleton, 987 F.2d 1444, 1449 (9th Cir. 1993) (defendant cannot establish standing simply by relying on United States's theory of the case); *United States v. Henry*, 939 F. Supp. 2d 1279, 1288 (N.D. Ga. April 5, 2013) ("Henry's reliance on the government's theory of the case—that he stored drugs at his girlfriend's residence—is, as has been discussed, an improper basis upon which to claim standing.").) That's because a law enforcement agent's conclusion in a search warrant that items found in a house provide "reason to believe" someone lived there is not evidence of that fact that a defendant may use to establish standing.

Defendant Washington had the burden of establishing his standing to contest the Hudson Street search but withdrew his declaration averring a connection to the apartment and offered no alternative

evidence. The Court adopts the Magistrate Judge's conclusion that Defendant Washington lacks standing to challenge the search of that location.

**2. Raynor Road Residence**

When police searched the Raynor Drive residence, they found a rental car agreement in Defendant Washington's name and a Spectrum cable bill for the home in his name. (Dkt. 253 at 6.) They also found a Spectrum bill in his name in the mailbox. (*Id.*) The Magistrate Judge concluded those documents were not enough to establish standing. (Dkt. 424 at 15-16.) In objecting, Defendant Washington insists his name on the utility bill "indicates his residency there and demonstrates his ability to exercise dominion and control over the residence," thus providing constitutional standing. (Dkt. 444 at 9.) He cites no authority for this contention, and the Court has found none.

Certainly, someone could pay a cable bill for a home where he or she does not live or claim a right of privacy (like a parent paying for a child, a former spouse paying under a divorce decree, or even a friend paying for a friend). And someone could certainly continue to receive cable bills after vacating a premises. Likewise the mere presence of

someone's receipt in a home is not enough to establish that person's expectation of privacy in the location. The combination of these two items also is insufficient to show an expectation of privacy in the home that society would recognize as legitimate.

**3. 2019 Grey Maxima**

Defendant Washington's efforts to establish standing regarding the Grey Maxima is similarly lacking. In the warrant, the affiant averred that law enforcement interviewed Elisa Johnson (the tenant of the home at 10 Center Street in Cresskill, New Jersey) on July 11, 2020 (a few days after the search of that home). (Dkt. 337-1 ¶ 38.) She denied knowing Defendant Washington. (*Id.*) After that interview, she drove with a person law enforcement believed to be Defendant Washington to LaGuardia airport, returned a Hertz rental car she had been driving, and rented the Maxima 30 minutes later while with the person who "appear[ed] to be" Defendant Washington. (*Id.* at ¶¶ 40-42.) Law enforcement then saw the person they "believed to be" Defendant Washington driving the car.

The driver of a borrowed car has standing to challenge a search of it. *United States v. Miller*, 821 F.2d 546, 549 (11th Cir. 1987) ("finding

that [defendant] has standing to challenge the search of a car borrowed from a friend"); *United States v. Brown*, 203 Fed. Appx. 997, 998 (11th Cir. 2006) (defendant "had a reasonable expectation of privacy in the car because [he] had permission to drive it"). The Magistrate Judge, however, concluded Defendant Washington could not rely on the affiant's theory of the case to establish Johnson gave him permission to borrow the vehicle and, even if he could, the affiant's statement that she "believed" Defendant Washington to be driving was insufficient to show he had permission to drive the car. (Dkt. 424 at 18-19.) Defendant Washington objects and insists he is not relying on the United States's theory but rather "the sworn testimony (via affidavit) of law enforcement officers who described their observations." (Dkt. 444 at 9.)

Defendant Washington's argument misses the point. He cannot rely upon the United States's theory from the warrant affidavit that the affiant "believed" Defendant Washington was driving the car or was with Johnson when she rented it to establish his standing. A defendant has the burden of showing a legitimate expectation of privacy in the area searched by a preponderance of the evidence. *United States v. Harris*, 526 F.3d 1334, 1338 (11th Cir. 2008). What an investigator thought or

posited in a warrant affidavit is not enough to carry that burden. Because Defendant Washington conceded he presented no other evidence to establish his lawful possession of the vehicle, the Court agrees with the Magistrate Judge's conclusion that he lacks standing to challenge the installation of the tracking device.

**4. Standing Conclusion**

Because the Court agrees with the Magistrate Judge's conclusion that Defendant Washington lacks standing to challenge the searches of the Hudson Street and Raynor Drive residences or the placement of the tracking device on the Nissan Maxima, the Court adopts the Magistrate Judge's recommendation that it deny Defendant Washington's motion to suppress those law enforcement actions.

**B. Probable Cause**

"The Fourth Amendment requires that a search warrant be issued only when there is probable cause to believe that an offense has been committed and that evidence exists at the place for which the warrant is requested." *United States v. Betancourt*, 734 F.2d 750, 754 (11th Cir. 1984) (citing *Zurcher v. Stanford Daily*, 436 U.S. 547, 558 (1978)); Probable cause exists when, under the "totality of the circumstances . . .,

there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238 (1983). In other words, a search warrant is supported by probable cause if the supporting affidavit establishes "a connection between the defendant and the location to be searched; . . . a link between the location and criminal activity; and . . . the informant's veracity and basis of knowledge." *United States v. Davis*, 313 F.3d 1300, 133 (11th Cir. 2002). "[A] police officer's expectation, based on prior experience and the specific circumstances of the alleged crime, that evidence is likely to be found in a suspect's residence satisfies probable cause." *United States v. Bradley*, 644 F.3d 1213, 1263-64 (11th Cir. 2011).

### 1. Hudson Street and Four Vehicle Warrant

Defendant Washington moved to suppress evidence seized from the Hudson Street Apartment, the Nissan Murano, Ford Edge, Jeep Cherokee, and the Nissan Rogue, arguing the affidavit for that multi-location warrant relied on evidence obtained from the unconstitutional search of the 10 Center Street residence. (Dkt. 218 at 3-4.)[3] Referencing

[3] Technically, the warrant was supported by a certification in lieu of oath. (Dkt. 218-1)

his prior order upholding the Center Street search, the Magistrate Judge recommends denial of Defendant Washington's derivative attack on the other warrant. Alternatively, the Magistrate Judge concluded that, even excluding any evidence from the 10 Center Street search, the warrant for the Hudson Street Apartment and four vehicles was sufficient to establish probable cause for those searches. (Dkt. 424 at 24-30.)

Defendant Washington objects to the first conclusion, arguing the Magistrate Judge misunderstood his argument. (Dkt. 444 at 10.) He says he was not challenging the search of the Center Street residence but rather the search of the two safes found in the residence. (*Id.*)[4] The Court

[4] Defendant Washington also contends the Center Street warrant did not create probable cause to support the search of computers, cell phones, computer discs, audio recordings and other electronic media. (Dkt. 217 at 12-14.) But the affiant explained he wanted to seize those items, that "analysis and comparison of certain telephone records, and stored electronic data is often instrumental in determining the extent of criminal activity and identifying individuals who may have aided the suspect in his criminal activities"; that a search of phones would reveal "records of communications, location information, text messages and data which connects suspects, coconspirators, victims, and witnesses to each other, the criminal activity and/or the crime scene"; text message from the phones would reveal information about the phones' users and their criminal activity; analysis of the phones would allow "relational and pattern" analysis to connect individuals to the criminal activity; and that analysis of electronic devices and storage media can even locate information after a user attempts to delete it. (Dkt. 217-1 ¶¶ 13, 21- 25.) The Court thus concludes the search warrant established probable cause

has already concluded that Defendant Washington lacks standing to contest the Center Street search. (Dkt. 458 at 19.) He thus cannot use the alleged unconstitutionality of that search to attack the validity of the Hudson Street and vehicle warrant—the fruit of the poisonous tree does not extend that far. *See United States v. Payner*, 447 U.S. 727, 735 (1980) ("We conclude that the supervisory power does not authorize a federal court to suppress otherwise admissible evidence on the ground that it was seized unlawfully from a third party not before the court. Our Fourth Amendment decisions have established beyond any doubt that the interest in deterring illegal searches does not justify the exclusion of tainted evidence at the instance of a party who was not the victim of the challenged practices."). And even if it could, there's no poisonous fruit here since the Court already concluded the Center Street warrant contained sufficient probable cause to search the safes, particularly

---

to justify the search of those items. *United States v. Kendrick,* 2016 WL 5952743 at *7 (N.D. Ga. Oct. 13, 2016) ("it takes no special expertise for a judge to infer that information related to an active criminal enterprise may be contained on a cell phone"); *Riley v. California*, 573 U.S. 373, 401 (2014) ("Cell phones have become important tools in facilitating coordination and communication among members of criminal enterprises, and can provide valuable incriminating information about dangerous criminals.").

because the warrant established the would-be robbers attacked an occupant of the home in the hopes of accessing the safes. (Dkt. 458 at 27-28.)

And going even further, the good-faith exception to suppression would save any search of the Center Street residence, thus allowing use of that evidence in the Hudson Street/vehicle warrant. In *United States v. Leon*, the Supreme Court explained a court should not exclude evidence "obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." *United States v. Leon*, 468 U.S. 897, 900 (1984). This good-faith exception applies in all but four circumstances: (1) where the issuing magistrate judge was misled by information in a warrant application the applicant knew was false or would have known but for reckless disregard for the truth; (2) where the magistrate "wholly abandoned" his or her judicial role; (3) where the affidavit supporting the application was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or (4) where the warrant was "so facially deficient" that officers couldn't have reasonably presumed it to be valid. *United States v. Taylor*, 935 F.3d 1279, 1291

(11th Cir. 2019) (internal quotation marks and citation omitted).

The Magistrate Judge previously concluded the good-faith exception applies to the Center Street residence. (Dkt. 422 at 57.) Defendant Washington identifies no error in that analysis (Dkt. 444 at 21), and the Court finds none. No evidence suggests the affiant of the Center Street warrant intentionally or recklessly misled the judge who issued the warrant. The warrant was not so lacking in probable cause to support the search or otherwise defective on its face to suggest the issuing judge abandoned his or her "judicial role" or to suggest no reasonable officer could have believed the warrant valid. So even if the warrant is otherwise defective, the United States is entitled to the good-faith exception to suppression to protect the legitimacy of the items seized from Center Street.

Defendant Washington also seeks to suppress the search of the Raynor Road residence on the same grounds he seeks to suppress the search of the Hudson Street residence and four vehicles—the alleged

unconstitutionality of the Center Street Search. The Court rejects that attack and adopts its prior reasoning.[5]

**2. Tracking Device Warrant**

Defendant Washington also moves to suppress the installation of tracking devices on the 2019 Nissan Maxima and 2022 Chevy Malibu, claiming the warrants lacked probable cause. (Dkt. 220.) The Magistrate Judge says the Court should deny that motion because Defendant Washington's two-page self-titled "preliminary motion to suppress" include only a singular, conclusory statement alleging the lack of probable cause that was insufficient to raise his argument. (Dkt. 424 at 37.) Defendant Washington does not object to that conclusion. The Court

---

[5] The Magistrate Judge concluded that, even excluding evidence from the Center Street search, the warrants for Raynor Drive, Hudson Street, and the four vehicles (Nissan Murano, Ford Edge, Jeep Cherokee, and the Nissan Rogue) contain sufficient probable cause to support those warrants. (Dkt. 424 at 24-28; 31-34.) Defendant Washington does not engage with that conclusion, instead insisting he "relies entirely on the fact that the evidence from the search of 10 center Strees was central to the other warrants and because [that] search was unconstitutional, the subsequent warrants are defective." (Dkt. 444 at 20.) Having reviewed the report and recommendation, the Court agrees with the Magistrate Judge's assessment as to the viability of the other warrants even excluding any evidence obtained from the Center Street search. So, the Court denies Defendant Washington's motion to suppress the Raynor Drive, Hudson Street, and vehicles searches for that reason well.

agrees with the Magistrate Judge's assessment. *United States v. Tarantino*, 2024 WL 3085858, at *8 (11th Cir. June 21, 2024) ("Motions to suppress must in every critical respect be sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that a substantial claim is presented.") (internal citations omitted). It appears Defendant Washington anticipated filing a motion to suppress those warrants, filed his "preliminary" motion as a placeholder, but then reconsidered and abandoned his motion. That he does not object to the Magistrate Judge's recommendation solidifies that conclusion.

## IV. Conclusion

The Court **OVERRULES** Defendant Turomne Washington's objections (Dkt. 444), **ADOPTS** the Magistrate Judge's report and recommendation (Dkt. 424), and **DENIES** Defendant Washington's motions to suppress the search of the Hudson Street and Raynor Drive residences, the searches of the Nissan Murano, Ford Edge, Jeep Cherokee, and the Nissan Rogue, and the placement of tracking devices on the Nissan Maxima and Chevy Malibu. (Dkts. 218, 219, 220).

**SO ORDERED** this 6th day of November, 2026

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE